# Exhibit 6

# LIONBRIDGE

STATE OF NEW YORK        )
                         )        ss
COUNTY OF NEW YORK       )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true
and accurate translation from Danish into English of the attached document U.1994.719Ø. I
affirm that the linguist responsible for producing this translation is fluent in both the Danish and
English languages.

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me
this 5th day of June , 20 22 .

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

UfR [*Ugeskrift for Retsvæsen* (Weekly Judiciary Journal)] ONLINE    U.1994.719Ø

**U.1994.719Ø**

**Ø.L.D.** [*Østre Landsret dom* (Judgment of the High Court of Eastern Denmark)] **May 9, 1994, in the 12ᵗʰ Division, Case no. B-2170-93**

(Kjærsgaard, Plessing, Helle Schaumann (kst. [*konstitueret* (acting)])).

*Alfred Horwitz & Co. A/S in bankruptcy, Trustees Torben Gertz, Attorney and Michael Ziegler, Attorney (Torben Gertz, Attorney, Copenhagen)*
against
*Finansieringsselskabet af 2. oktober 1988 ApS* [the financing company of October 2, 1988, ApS (*anpartsselskab* [private limited company])] *(A.C. Lentz, Attorney, Head Clerk Camilla Lentz, Attorney, Copenhagen).*

*Bankruptcy and other insolvency law 2.3 Monetary Affairs 1 Money affairs 9*
***Stocks wrongly registered in the Danish Securities Center*** [Værdipapircentral] *under the name of the bankrupt are not covered by the assets in the bankruptcy.*

- Under the company's name, the Brokerage unjustly registered stocks that belong to a client in a securities account that also held other similar stocks belonging to other customers. The Brokerage's bankruptcy estate could not include the stocks in the assets in the bankruptcy.

**Maritime and Commercial Court** [*Sø- og Handelsret*]

***Judgment of the Maritime and Commercial Court, July 29, 1993.***
This case concerns whether the Claimant, Finansieringsselskabet af 2 oktober 1988 ApS, has the right of secured creditor to postal stocks that were purchased by Alfred Horwitz & Co A/S (hereinafter, the "Brokerage") for the Claimant, but that, at the time of bankruptcy, were registered in the Danish Securities Center in the name of the Brokerage. The Claimant has filed a claim ordering Alfred Horwitz & Co. A/S in bankruptcy to recognize the Claimant's claim of DKK 132,955.50 as a mass claim with the standard penal interest applicable from June 10, 1991.
The Defendant has filed a claim that states the claim is only recognized as a simple claim with the standard penal interest thereof applicable from June 10, 1991, as Section 98 claim.
The parties agree that the stocks belonged to the Claimant prior to the bankruptcy.

***Circumstances of the case:***
In the fall of 1989, Alfred Horwitz & Co. A/S, a brokerage, purchased 2,000 units of UniDanmark Class A stocks for the Claimant at a price of 300 corresponding to a market value of DKK 600,000.00. In relation to this, an invoice dated October 3, 1989, was issued to the Claimant, based on which, among other things, it appears the stocks were purchased for the Claimant. Through the account-holding bank Sydbank A/S, the Brokerage then registered the stocks in the Danish Securities Center in its own name and not in the Claimant's name, of which the Claimant was not aware
The stocks were pledged by the Brokerage to Sydbank A/S, which, however, did not wish to support the right to the pledge, as Sydbank A/S's claim is sufficiently secured through other securities. On March 6, 1991, the Brokerage announced the suspension of payments, and, on May 17, 1991, the company

**720**

declared bankruptcy. Attorneys Michael Ziegler and Torben Gertz have been appointed as Trustees.
At the time of bankruptcy, the Brokerage had accounts receivable of DKK 410,764.50 from the Claimant. By agreement between the parties, the stocks were realized on June 10, 1991 at DKK 530,720.00,

after which the estate off set its claim against the Claimant by these proceeds, so that the Claimant's claim only constitutes the difference amount.
The Claimant has stated that the Claimant has ownership rights to the stocks per Section 53(2) of the Danish Commission Act [*Kommissionslov*]. The Claimant immediately became the owner of the stocks at the time of purchase, and the Claimant therefore had a secured creditor claim at the time of the delivery of the decision per Section 82 of the Danish Bankruptcy Act [*Konkurslov*].
The Brokerage had undertaken to purchase the stocks for the Claimant, and, based on the invoice dated October 3, 1989, the Brokerage appears to have purchased the stocks for the Claimant. However, because the Brokerage registered these stocks in its own name in the Danish Securities Center, even though it did not have ownership rights to the stocks, the registration agreement is invalid. It is irrelevant whether the objection is strong or weak. What matters most is that the Brokerage has never had ownership rights to the stocks.
Section 11 of the Danish Securities Trading Act [*Værdipapircentrallov*] can only be invoked by bona fide contract assignees. There is no doubt that the Brokerage knew it had no ownership rights to the stocks. The estate can therefore not displace the Claimant's objections to registration, since the Brokerage acted in bad faith. The Claimant still held ownership rights to the stocks after registration.
Furthermore, the estate does not meet the extinction conditions set in Section 8 of the Danish Securities Trading Act, as there is no conflict between rights as provided for in this provision, just as the provision does not authorize extinction for creditors.
It appears from the preparatory work for the Danish Securities Trading Act that Sections 8 and 11 of the Act correspond to Sections 1 and 27 of the Danish Land Registry Act [*Tinglysningslov*]. A parallel to the Danish Land Registry Act would not be too far-reaching in this case.
Section 1 of the Danish Land Registry Act does not authorize extinction access for creditors against either weak or strong objections. It does not appear from the preparatory work for Sections 8 and 11 of the Danish Securities Trading Act that creditors should be placed in a better position than under the Danish Land Registry Act. A creditor does not garner better rights than their debtor, which is why the estate cannot garner better rights than the Brokerage had. When bankruptcy is declared, the estate obtains protection against the debtor's dispositions. The registration, on the other hand, does not create a right for the estate that the debtor did not have. The conflict must be resolved in accordance with the rules of the Danish Commission Act. The parties agree that, between the parties, the Claimant is the owner of the stocks, cf. Section 53(1) of the Danish Commission Act 2. This must also apply to creditors, including the bankruptcy estate. The same protection considerations for creditors do not exist as for contract assignees who act in good faith.
It is uncontested that the amount should accrue interest from June 10, 1991, on. Pursuant to Section 5 of the Danish Interest Act [*Rentelov*], default interest can be calculated from the cut-off date, unless otherwise agreed. Sections 83 and 84 of the Danish Bankruptcy Act cannot support a reduction in the claim, as the Claimant had asserted their right before the sale of the stocks.
The estate has stated that the Claimant owned the stocks until the Brokerage was declared bankrupt, and that the Danish Securities Center was notified. Thereafter, the bankruptcy estate became the owner of the stocks. The Danish Securities Trading Act is a special law in relation to the Danish Commission Act. While it is true that the principles in Sections 1 and 27 of the Danish Land Registry Act have been transferred to Sections 8 and 11 of the Danish Securities Trading Act, no extensive conclusions can be drawn from this, as the two acts pertain to different assets. Furthermore, stocks registered in the Danish Securities Center cannot be identified.
The bankruptcy estate has had its right registered in the Danish Securities Center, which is why the estate can displace the Claimant's unregistered right in accordance with Section 8(2) of the Danish Securities Center Act. As the Claimant did not have their right registered, the Claimant lost this. As the Brokerage has subsequently

UfR [*Ugeskrift for Retsvæsen* (Weekly Judiciary Journal)] ONLINE                                                U.1994.719Ø

declared bankruptcy, the bankruptcy estate supersedes the Claimant's unregistered right, and the estate as a creditor does not have to be in good faith at the time of registration.

Due to the dispute over ownership rights, interest can only be paid to the extent that the estate has recovered a return on the disputed amount, cf. Sections 83 and 84 of the Danish Bankruptcy Act.

**The Probate and Bankruptcy Court must state:**
It appears from the preparatory work for the Danish Securities Trading Act that the intention was to create a legal system that was credible to contract assignees and creditors, and thereby secure the transfer, and that the system in certain areas should be built according to the principles of the land registry system.

It is undisputed that the stocks belonged to the Claimant prior to the bankruptcy and that the Brokerage's registration as the owner in the Danish Securities Center was unjustified in relation to the Claimant. Thus, in relation to the Brokerage, which acted in bad faith in its right to the stocks, the Claimant could be able to invoke the principles in Section 11 of the Danish Securities Trading Act, as there was no agreement on transfer. It is assumed, with regard to ownership, that objections pursuant to Section 27 of the Danish Land Registry Act can be asserted to the same extent against the transferee's prosecuting creditors as against the transferee themself, regardless of whether Section 27 of the Danish Land Registry Act cannot be applied directly to creditors.

**721**

The Claimant is then found to be able to assert their objections to the bankruptcy estate.

The fact that Section 8 of the Danish Securities Trading Act does not require good faith in order to extinguish a right does not change this, as the provision on extinction in Section 8 of the Danish Securities Trading Act only aims to secure the registered rights the debtor had and that, for the security of the transfer, it is necessary to extinguish, whereas the provision is not intended to create additional rights for the creditors.

As such, the Claimant's claim for recognition of the claim as a mass claim is then upheld.

As the question of the Claimant's ownership rights was disputed by the estate not without reason, the Claimant is only found to be entitled to the interest obtained by the estate.

**High Court of Eastern Denmark** [*Østre Landsret*]

***Judgment of the High Court of Eastern Denmark.***
The Probate and Bankruptcy Court judgment of the Maritime and Commercial Court, July 29, 1993, (KP 63/91) has been appealed by Alfred Horwitz & Co. A/S in bankruptcy with a claim that the Claimant's claim of DKK 132,955.50 should only be recognized as a simple claim, with the standard penal interest of which being applicable from June 10, 1991, on, or as a Section 98 claim, and that interest can only be paid to the extent that the estate has recovered a return on the disputed amount, cf. Sections 83 and 84 of the Danish Bankruptcy Act. The respondent, Finansieringsselskabet af 2 oktober 1988 ApS, has allegedly upheld the decision.

No explanations have been submitted to the High Court.

As stated in the Probate and Bankruptcy Court judgment, the stocks belonged to the Claimant prior to the bankruptcy. There is further agreement before the High Court that, through Sydbank, other similar stocks were registered in the same securities account, and that all these stocks belonged to clients of the Brokerage, which did not own any part of the securities account. It is also agreed that there was conformity between the bookkeeping of the Brokerage and the depository's issuer. In this case, the stocks in question did not belong to the Brokerage, which unjustly registered the stocks in the Danish Securities Center in its own name. Under these circumstances, the stocks are not found to have been able to be included under the estate assets, whereby it is

noted that Section 8 of the Danish Securities Trading Act, as stated by the Probate and Bankruptcy Court, cannot support a different result. Hereby, and for the reasons otherwise stated by the Probate and Bankruptcy Court, the judgment will be upheld. The judgment's provisions on interest - - - are accepted.

**U.1994.719Ø**

**Ø.L.D. 9. maj 1994 i 12. afd. sag nr. B-2170-93**
(Kjærsgaard, Plessing, Helle Schaumann (kst.)).

*Alfred Horwitz & Co. A/S under konkurs v/ kuratorerne adv. Torben Gertz og adv. Michael Ziegler (adv. Torben Gertz, København)*
mod
*Finansieringsselskabet af 2. oktober 1988 ApS (adv. A.C. Lentz v. adv. fm. Camilla Lentz, København).*

*Konkurs- og anden insolvensret 2.3 Pengevæsen m.v. 1 Pengevæsen m.v. 9*
**Aktier uretmæssigt registreret i Værdipapircentralen under fallents navn ikke omfattet af konkursmassen.**

♦ Vekselererfirma havde med urette ladet aktier tilhørende en kunde registrere i firmaets navn i et depot, som tillige omfattede andre tilsvarende aktier tilhørende andre kunder. Vekselererfirmaets konkursbo kunne ikke inddrage aktierne under konkursmassen.

## Sø- og Handelsretten

### Sø- og Handelsrettens dom af 29. juli 1993.

Denne sag drejer sig om, hvorvidt anmelderen, Finansieringsselskabet af 2. oktober 1988 ApS, har separatistret til en post aktier, der af Alfred Horwitz & Co. A/S (i det følgende nævnt vekselererfirmaet) var købt for anmelderen, men på konkurstidspunktet var registreret i Værdipapircentralen i vekselererfirmaets navn.

Anmelderen har nedlagt påstand om, at Alfred Horwitz & Co. A/S under konkurs tilpligtes at anerkende anmelderens fordring på kr. 132.955,50 som massekrav med sædvanlig procesrente fra den 10. juni 1991.

Sagsøgte har nedlagt påstand om, at kravet alene anerkendes som simpelt krav med sædvanlig procesrente heraf fra den 10. juni 1991 som § 98 krav.

Parterne er enige om, at aktierne inden konkursen tilhørte anmelderen.

### Sagens omstændigheder:

I efteråret 1989 købte Alfred Horwitz & Co. A/S, der var et vekselererfirma, for anmelderen 2000 stk. UniDanmark A-aktier til kurs 300 svarende til en kursværdi stor kr. 600.000,00. Der blev i den forbindelse udstedt en faktura af 3. oktober 1989 til anmelderen, hvoraf bl.a. fremgår, at aktierne er købt for anmelderen.

Vekselererfirmaet lod herefter gennem det kontoførende pengeinstitut Sydbank A/S aktierne registrere i Værdipapircentralen i eget navn og ikke i anmelderens navn, hvilket anmelderen ikke var vidende om.

Aktierne blev af vekselererfirmaet frempantsat til Sydbank A/S, der dog ikke har ønsket at støtte ret på pantsætningen, da Sydbank A/S's fordring er tilstrækkelig sikret gennem andre sikkerheder.

Den 6. marts 1991 anmeldte vekselererfirmaet betalingsstandsning, og den 17. maj 1991 blev selskabet

**720**

erklæret konkurs. Som kuratorer er valgt advokat Michael Ziegler og advokat Torben Gertz.

På konkurstidspunktet havde vekselererfirmaet et tilgodehavende hos anmelderen på kr. 410.764,50. Efter aftale mellem parterne blev aktierne den 10. juni 1991 realiseret for kr. 530.720,00, og

boet modregnede herefter sit krav mod anmelderen i dette provenu, således at anmelderens krav alene udgør differencebeløbet.

Anmelderen har anført, at anmelderen har ejendomsretten over aktierne i henhold til kommissionslovens § 53, stk. 2. Anmelderen blev straks ved købet ejer af aktierne, og anmelderen havde derfor ved dekretets afsigelse separatistkrav i henhold til konkurslovens § 82.

Vekselererfirmaet havde bundet sig til at købe aktierne for anmelderen, og det fremgår af fakturaen af 3. oktober 1989, at vekselererfirmaet købte aktierne for anmelderen. Vekselererfirmaet lod dog aktierne registrere i eget navn i Værdipapircentralen, selvom det ikke havde ejendomsretten til aktierne, hvorfor registreringsaftalen er ugyldig. Det er uden betydning, om indsigelsen er stærk eller svag. Det afgørende er, at vekselererfirmaet aldrig har haft ejendomsret til aktierne.

Værdipapircentralovens § 11 kan alene påberåbes af godtroende aftaleerhververe. Der er ikke tvivl om, at vekselererfirmaet vidste, at det ikke havde ejendomsret over aktierne. Boet kan derfor ikke fortrænge anmelderens indsigelser ved registreringen, idet vekselererfirmaet var i ond tro. Anmelderen havde stadig ejendomsretten over aktierne efter registreringen.

Endvidere opfylder boet ikke ekstinktionsbetingelserne i værdipapircentralovens § 8, idet der ikke foreligger en konflikt mellem rettigheder som forudsat efter denne bestemmelse, ligesom bestemmelsen ikke hjemler ekstinktion for kreditorer.

Det fremgår af forarbejderne til værdipapircentralovens §§ 8 og 11 svarer til tinglysningslovens § 1 og § 27. En parallel til tinglysningsloven bliver i denne sag ikke for vidtgående.

Tinglysningslovens § 1 hjemler ikke ekstinktionsadgang for kreditorer hverken over for svage eller stærke indsigelser. Det fremgår ikke af forarbejderne til værdipapircentralovens §§ 8 og 11, at kreditorer skal stilles bedre end efter tinglysningsloven. En kreditor vinder ikke bedre ret end sin skyldner, hvorfor boet ikke kan vinde bedre ret, end vekselererfirmaet havde. Ved registrering af konkursen opnår boet beskyttelse mod skyldnerens dispositioner. Registreringen skaber derimod ikke en ret for boet, som skyldneren ikke havde. Konflikten må løses efter kommissionslovens regler. Parterne er enige om, at anmelderen inter partes er ejer af aktierne, jf. kommissionslovens § 53, stk. 2. Dette må også gælde over for kreditorerne, herunder konkursboet. Der er ikke samme beskyttelseshensyn over for kreditorerne som over for aftaleerhververe, der er i god tro.

Det er ubestridt, at beløbet skal forrentes fra den 10. juni 1991. Der kan efter rentelovens § 5 beregnes morarenter fra forfaldsdagen, idet der ikke er aftalt andet. Konkurslovens §§ 83 og 84 kan ikke føre til en reducering af kravet, idet anmelderen havde gjort sin ret gældende inden salget af aktierne.

Boet har anført, at anmelderen ejede aktierne, indtil vekselererfirmaet blev erklæret konkurs, og dette blev meddelt Værdipapircentralen. Derefter blev konkursboet ejer af aktierne.

Værdipapircentralloven er en speciallov i forhold til kommissionsloven. Det er rigtigt, at principperne i tinglysningslovens § 1 og § 27 er overført til værdipapircentralovens § 8 og § 11, men der kan dog ikke drages for vidtgående konklusioner heraf, idet de to love vedrører forskellige aktiver. Endvidere kan aktier, der er indskrevet i Værdipapircentralen, ikke identificeres.

Konkursboet har fået sin ret registreret i Værdipapircentralen, hvorfor boet kan fortrænge anmelderens ikke registrerede ret i henhold til værdipapircentralovens § 8, stk. 2. Anmelderen ikke har fået sin ret registreret, har anmelderen fortabt denne. Da vekselererfirmaet efterfølgende er erklæret konkurs, fortrænger

konkursboet anmelderens ikke registrerede ret, og boet behøver som kreditor ikke at være i god tro ved registreringen.

Da der er tvist om ejendomsretten, indebærer dette, at der alene kan udbetales renter i det omfang, boet har indvundet afkast af det omstridte beløb, jf. konkurslovens §§ 83 og 84.

### Skifteretten skal udtale:

Det fremgår af forarbejderne til værdipapircentralloven, at man har ønsket at skabe et retssystem, der var troværdigt over for aftaleerhververe og kreditorer, og dermed til betryggelse af omsætningen, samt at systemet på visse områder skulle opbygges efter principperne i tinglysningssystemet.

Det er ubestridt, at aktierne inden konkursen tilhørte anmelderen, og at vekselererfirmaets registrering som ejer i Værdipapircentralen var uberettiget i forhold til anmelderen. Anmelderen ville således i forhold til vekselererfirmaet, der var i ond tro om sin ret til aktierne, kunne påberåbe sig principperne i værdipapircentrallovens § 11, idet der ikke forelå nogen aftale om overdragelse. Det antages, for så vidt angår fast ejendom, at indsigelser i medfør af tinglysningslovens § 27 kan gøres gældende i samme omfang over for erhververens retsforfølgende kreditorer som overfor erhververen selv, uanset at tinglysningslovens § 27 ikke direkte kan anvendes over for kreditorer.

   **721**

Anmelderen findes herefter at kunne gøre sine indsigelser gældende over for konkursboet.

Det forhold, at værdipapircentrallovens § 8 ikke stiller krav om god tro for at ekstingvere en rettighed, ændrer ikke herved, idet bestemmelsen om ekstinktion i værdipapircentrallovens § 8 alene har til formål at sikre de registrerede rettigheder, som skyldneren havde, og som det under hensyn til betryggelsen af omsætningen er nødvendig at ekstingvere, hvorimod bestemmelsen ikke har til formål at skabe yderligere rettigheder for kreditorerne.

Herefter tages anmelderens påstand om anerkendelse af fordringen som massekrav til følge.

Da spørgsmålet om anmelderens ejendomsret ikke uden grund blev bestridt af boet, findes anmelderen alene at have krav på de af boet indvundne renter.

### Østre Landsret

#### Østre Landsrets dom.

Sø- og Handelsrettens skifteretsdom af 29. juli 1993 (KP 63/91)er anket af Alfred Horwitz & Co. A/S under konkurs med påstand om

   at anmelderens fordring, kr. 132.955,50, alene anerkendes som simpelt krav, med sædvanlig procesrente heraf fra d. 10. juni 1991, som § 98 krav, samt

   at der alene kan udbetales renter i det omfang, boet har indvundet afkast af det omstridte beløb, jf. konkurslovens §§ 83 og 84.

   Indstævnte, Finansieringsselskabet af 2. oktober 1988 ApS, har påstået stadfæstelse.

   Der er ikke for landsretten afgivet forklaringer.

   Som anført i skifterettens dom tilhørte aktierne inden konkursen anmelderen. Der er for landsretten yderligere enighed om, at der gennem Sydbank var registreret andre tilsvarende aktier i samme depot, og at alle disse aktier tilhørte kunder hos vekselererfirmaet, der ikke selv ejede nogen del af depotet. Der er ligeledes enighed om, at der var overensstemmelse mellem bogføringen hos vekselererfirmaet og depotets udvisende.

   De i denne sag omhandlede aktier tilhørte herefter ikke vekselererfirmaet, der med urette har ladet aktierne registrere i Værdipapircentralen i sit eget navn. Under disse omstændigheder findes aktierne ikke at have kunnet inddrages under bomassen,

hvorved bemærkes, at værdipapircentrallovens § 8 som anført af skifteretten ikke kan føre til andet resultat. Herefter og af de af skifteretten i øvrigt anførte grunde vil dommen være at stadfæste. Dommens bestemmelser om renter - - - tiltrædes.