# Exhibit 1

| | |
|---|---|
| **From:** | Matthew Stein <mstein@argremgt.com> |
| **Sent:** | Wednesday, June 27, 2012 10:37 AM |
| **To:** | Richard Markowitz <rmarkowitz@argremgt.com>; Adam Larosa <alarosa@argremgt.com>; Jérôme LHOTE <jlhote@argremgt.com> |
| **Subject:** | FW: Denmark |
| **Attach:** | Danish tax opinion.pdf |

**From:** Raj Shah [mailto:Raj.Shah@solo.com]
**Sent:** Wednesday, June 27, 2012 9:41 AM
**To:** Matthew Stein
**Cc:** Graham Horn
**Subject:** Denmark

FYI only - A riveting read.

Next stage – systems testing on our side.

This email message has been delivered safely and archived online by Mimecast.
For more information please visit http://www.mimecast.com

CONFIDENTIAL

WH_MDL_00518141

27 June 2012

To:
Solo Capital (Dubai) Limited
Gate Village 5, Level 1
Dubai International Financial Centre
PO Box 506699
Dubai
United Arab Emirates

## DANISH TAX OPINION

**1      INTRODUCTION**

This opinion (the "**Opinion**") has been prepared at the request of Solo Capital Partners LLP.

The Opinion considers the Danish tax implications of certain transactions over Danish listed equities entered into by a United States pension fund ("**USPF**").

**2      SCOPE**

The Opinion considers the Danish tax implications for USPF of the contemplated transactions. The Opinion does not consider the potential tax implication for any counterparties to the contemplated transactions.

**3      CONTEMPLATED TRANSACTIONS**

USPF contemplates to make the following transactions:

1)      USPF purchases Danish exchange traded equities (the "**Equities**") (either via a regulated inter-dealer broker or via purchasing Eurex single-stock, physically delivered listed flex future contracts regarding the relevant Equities);

2)      The purchase of the Equities will take place prior to the ex-dividend date but no later than the dividend approval date meaning the date where the dividend is finally approved for distribution (generally meaning the date of the annual general shareholder's meeting) ("**Dividend Approval Date**"). The settlement date for the purchase of the Equities will be on or after the dividend record date. In the case of physically delivered listed futures contracts, the expiry date of the futures contract will be no later than the Dividend Approval Date;

3)      USPF will receive the dividend which has been declared on the Equities on Dividend Approval Date (the "**Danish Dividend**");

Hannes Snellman Advokatpartnerselskab
Amaliegade 15
1256 Copenhagen K, Denmark
Tel. +45 33 149 400 Fax +45 33 149 401
Business ID (CVR NO. 33387822)
Domicile Copenhagen
www.hannessnellman.com

CONFIDENTIAL

4)   On purchase of the Equities, USPF will hedge its long exposure on the Equities by selling exchange-traded, cash-settled single stock futures over the Equities (the "**Short Derivative**"). The price of the Short Derivative will take into account a proportion of the expected Danish Dividend in calculating the strike price of the Short Derivative but no adjustment will be made if the actual dividend amount is more or less than the expected dividend amount;

5)   On or after the ex-dividend date USPF will sell the Equities via an inter-dealer broker. The settlement date for the sale of the Equities will be the same date as the settlement date of the purchase of the Equities in 2) above. At the same time, USPF will enter into a long futures position over the Equities in order to close out the short futures position created in step 4 above  The long futures position will expire on the same date as the short futures position created in step 4 above;

6)   It is possible that in the period until sale, the Equities would be lent out under a stock loan (using a standard Global Master Securities Lending Agreement) to an unrelated party (which could be located in any jurisdiction) in order to minimize financing costs. The period of the stock loan is not expected to exceed 3 months and the stock loan would be cash collateralised. The stock loan transaction may be entered into on or after dividend record date (with settlement of the stock loan occurring on the same day) but always after Dividend Approval Date and the borrower of the Equities would not receive any dividend on the Equities.

## 4    ASSUMPTIONS

For the purpose of this Opinion, we have assumed that:

1)   USPF is a tax resident of the United States;

2)   USPF does not have a permanent establishment in Denmark;

3)   Dividends received by USPF on the Equities are not derived from the carrying on of a business by USPF or through an associated enterprise;

4)   USPF is comprised by Article 22 (2)(e) of the Denmark - US double tax treaty currently in force (the "**Denmark – US Tax Treaty**") entailing that USPF is:

    a)   A legal person organised under the laws of the United States to provide pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan; and

    b)   more than 50 percent of USPF's beneficiaries, members or participants are individuals resident in either the United States or Denmark;

5)   On purchase of the Equities, USPF will obtain unconditional ownership to the Equities and will have full ownership rights over the Equities on Dividend Approval Date including the right to receive the dividend declared on that date;

6)   The Equities will be held by USPF through a custodian. USPF's ownership to the Equities will be recorded with the custodian and, depending upon the custodian's and sub-custodian's other long and short positions, the Danish Securities Centre;

7)   The custodian's records will show that USPF is the legal and the beneficial owner of the Equities on Dividend Approval Date and that the Danish Dividend represents a real dividend on the Equities which is passed on to USPF by the custodian.

C17634277.1                                                                                  2 (6)

**CONFIDENTIAL**                                                           **WH_MDL_00518143**

## 5    OPINION

Based on the facts and assumptions outlined in Section 3 and Section 4 above we are of the opinion that:

1)    The contemplated transactions over the Equities should not attract any Danish tax other than withholding tax on dividends distributed on the Equities;

2)    USPF should be entitled to claim a full refund of the Danish dividend withholding imposed on the Equities pursuant to the Denmark – US Tax Treaty.

## 6    APPLICABLE DANISH TAX RULES

### 6.1    Tax treatment of outbound dividends

Dividends distributed by a Danish company are as a general rule subject to tax in the hands of the person or entity which is registered as the holder of the dividend paying shares on Dividend Approval Date.

If the holder of the dividend paying shares is a foreign person or entity, the dividend is as a point of departure subject to Danish withholding tax at the rate of 27 percent.

However, certain exemptions exist according to which certain foreign shareholders may be entitled to a full or partial exemption from Danish dividend withholding tax.

A US resident pension fund is entitled to a full exemption from Danish dividend withholding tax if the pension fund satisfies the following conditions set out in Article 10(3)(c) and Article 22(2)(e) of the Denmark – US Tax Treaty:

1)    The US pension fund is a resident in the US for tax purposes;

2)    The US pension fund is the beneficial owner of the dividend;

3)    The dividends concerned are not derived from the carrying on of a business by the US pension fund or through an associated enterprise; and

4)    The US pension fund is a legal entity organised under the laws of the United States to provide pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan and more than 50 percent of the pension fund's beneficiaries, members or participants are individuals resident in either the United States or Denmark.

A US pension fund which meets the above conditions will be entitled to a full exemption from Danish withholding tax on Danish source dividends.

The exemption is, however, not granted at source and the dividend distributing Danish entity must withhold tax from the dividend (at the standard rate of 27 percent) irrespective of the exemption. To obtain the exemption, a US pension fund must file a refund claim with the Danish tax authorities as described in Section 6.2 below.

C17634277.1                                                                                                   3 (6)

CONFIDENTIAL                                                                     WH_MDL_00518144

*The condition of beneficial ownership*

As transpires from the above, the entitlement to exemption from Danish dividend withholding tax pursuant to the Denmark – US Tax Treaty requires, inter alia, that the US pension fund qualifies as the beneficial owner of the dividend.

The concept of beneficial ownership does not exist under Danish domestic law and no formal distinction is thus made under Danish law between beneficial and legal ownership to shares and dividends received thereon. The general view is therefore that the condition of beneficial ownership must be understood in accordance with the treaty meaning of the term. The Danish tax authorities have so far based their interpretation of the beneficial ownership condition on the guidance provided in OECD commentary to the dividend and interest provisions in the OECD model tax treaty.

The Danish tax authorities have questioned a number of dividend withholding tax claims on the ground that the foreign dividend recipient is not the beneficial owners of the dividend and therefore is not entitled to treaty benefits. Such claims have however only been raised in cases where dividends have been paid to an intermediary parent/holding company which is controlled by an investor in an offshore jurisdiction. The Danish tax authorities have taken the position that such holding companies must be regarded as pure conduit companies which cannot be regarded as the beneficial owner of the dividends received.

So far, the Danish tax authorities have not denied exemption from Danish withholding tax on dividends paid to other entities than intermediary holding companies and we have seen no indication that they would consider to broaden the application of the beneficial owner condition to other categories of shareholders.

A recent ruling issued by the Swiss Federal Administrative Tribunal strongly suggest that the beneficial owner condition found in tax treaties cannot be applied to deny exemption from dividend withholding tax on the ground that the dividend recipient has entered into a derivative transaction over the concerned shares.

6.2     **Procedure for refund of Danish dividend withholding tax**

To obtain exemption from Danish dividend withholding tax pursuant to the Denmark – US Tax Treaty, a US Pension fund must file a claim for refund of the tax amount withheld with the Danish tax authorities. A special form exist (form # 06.003) which must be used for this purpose. The form is attached to the Opinion. The form is also available from the Danish tax authorities' website.

The claim for refund must be accompanied by documentation showing that the US Pension fund is a tax resident of the United States. Furthermore, the US pension fund must submit documentation evidencing that the US Pension fund satisfies the conditions stipulated in Article 22(2)(e) of the Denmark – US Tax Treaty.

The refund process usually takes one month. A right to interest compensation will arise if the withholding tax amount is not refunded by the Danish tax authorities within six months from the filing of the claim. In such event interest compensation is offered at a rate of 0.5 percent per month for the time exceeding the six month period.

6.3     **Tax treatment of capital gains on equities**

Foreign shareholders are unconditionally exempt from Danish taxation of capital gains on Danish equities.

CONFIDENTIAL                                                                                    WH_MDL_00518145

HANNES SNELLMAN

Consequently, neither the holding nor the sale of Danish equities by a foreign shareholder will give rise to Danish capital gains taxation.

This also means that the entering into of a stock loan transaction over Danish equities will not give rise to capital gains taxation of the foreign lender or foreign borrower of the stock.

**6.4      Tax treatment of stock futures transactions**

A stock futures transaction over Danish equities does not give rise to Danish taxation of a foreign resident party to the transaction.

**6.5      Transfer taxes**

No stamp duty or other Danish transfer taxes applies to any transaction over Danish equities.

**7        ANALYSIS**

**7.1      Danish dividend withholding tax**

Based on our understanding that USPF will have full ownership rights over the Equities on Dividend Approval Date and that USPF would only lend out the Equities after Dividend Approval Date with no dividend rights attached, we believe that USPF must be considered the recipient of the Danish Dividend from a Danish domestic law perspective.

Consequently, we find that the Danish Dividend should be taxed in the hands of USPF.

USPF would, however, be entitled to a full exemption from Danish withholding tax if the conditions set out in Article 10(3)(c) and Article 22(2)(e) of the Denmark – US Tax Treaty are met. Based on the facts and assumptions set out in Section 3 and Section 4 above, we find that USPF must be considered to meet these conditions.

With respect to the condition of beneficial ownership we note the following:

- USPF will not be legally obligated to pay any portion of the Danish Dividend to any person;

- The price of the Short Derivative will take into account a proportion of the expected Danish Dividend in calculating the strike price of the Short Derivative but no adjustment will be made if the actual dividend amount is more or less than the expected dividend amount;

- The obligations under the Short Derivative exist and must be fulfilled by USPF regardless of whether USPF acquires the Danish Shares.

Under these circumstances, we find that USPF should be regarded as the beneficial owner of the Danish Dividend for the purpose of the Denmark – US Tax Treaty. Consequently, we find that USPF should be entitled to full exemption from Danish withholding tax on the Danish Dividend.

However, to obtain the exemption, USPF must submit a claim for refund to the Danish tax authorities which is accompanied by documentation showing that USPF is a tax resident of the United States and further showing that the conditions stipulated in Article 22(3)(e) of the Danish – US Tax Treaty are met. This means that USPF must submit documentation showing that USPF is a legal entity organized under US laws for the purposes of providing pension benefits to employees or self-employed individuals and that more than 50 percent of its members or beneficiaries will be individuals residing in United States or in Denmark.

C17634277.1                                                                                          5 (6)

**CONFIDENTIAL**                                                                        **WH_MDL_00518146**

HANNES SNELLMAN

### 7.2    Other Danish tax implications of the contemplated transactions

No other Danish taxes should apply to contemplated transactions and the contemplated transactions should therefore not give rise to any other Danish tax implications than the withholding and subsequent claim for refund of Danish tax on the Danish Dividend.

For the avoidance of doubt, it is noted that the issue of bank charges or similar charges resulting from the registration of title with the Danish Securities Centre or equivalent foreign depository is not considered.

### 8    GOVERNING LAW AND JURISDICTION

This Opinion shall be governed and construed in accordance with Danish law and any dispute arising out of or in connection with this Opinion shall be subject to the exclusive jurisdictions of the Danish courts.

### 9    RELIANCE

This Opinion is rendered solely for your benefit and may only be relied upon by you in the very matter and context specified herein.

This Opinion may not, without our prior written consent, be disclosed to any other person save that it may be disclosed without such consent to your legal counsel.

We are not assuming any obligation to notify you of any changes to the opinions expressed herein as a result of any facts or circumstances that may come to our attention in the future or as a result of any change in the laws of Denmark which may hereafter occur.

Nikolaj Bjørnholm                                    Anne Becker-Christensen

C17634277.1                                    6 (6)

**CONFIDENTIAL**                                    **WH_MDL_00518147**